THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v
JOHN COSGROVE, JR., PLAINTIFF IN ERROR.

Argued March 3, 1925—Decided February 23, 1926.

1. An acquittal on an indictment for manslaughter committed on
   L. will not bar an indictment for atrocious assault and battery
   on M., though the killing and the assault were features of the
   same occurrence.
2. On a traverse of a plea of *autrefois acquit,* and a trial of that
   issue by a jury, it is not error to direct a verdict against the
   plea when the conceded facts in evidence fail to support it.

On error to the Essex Quarter Sessions Court.

Before Justices PARKER and KATZENBACH.

For the plaintiff in error, *Harold Simandl.*

For the defendant in error, *John O. Bigelow,* prosecutor
of the pleas.

The opinion of the court was delivered by

PARKER, J. The plaintiff in error, defendant below, was
convicted on indictment charging him with atrocious assault
and battery, and brings this writ of error to review that con-
viction. The principal attack on the judgment below is
based on a plea of *autrefois acquit,* which was traversed by
the state and tried with a jury, the judge directing the jury
to find a verdict against the plea.

The plea was based on these general facts: The defendant,
driving a motor car, ran down one Mary Mullaney, inflicting
injuries from which she died; and in the same collision ran
down one Lillian Dowling, who was severely injured, but
recovered. Defendant was indicted for manslaughter aris-
ing out of the killing of Mary, and, by a separate indictment,
was charged with atrocious assault upon Lillian. The in-
dictment for manslaughter was tried first, and the defendant

was acquitted, and it was this acquittal that was invoked under the plea of *autrefois acquit* in the assault and battery case now at bar.

Counsel for the plaintiff in error urges with vigor and at great length the claim that, "inasmuch as both indictments grew out of the same occurrence, and inasmuch as manslaughter is a higher grade of crime than assault and battery, and the defendant was acquitted on an indictment for manslaughter though the victim was different, the acquittal of manslaughter bars the further prosecution of the indictment for atrocious assault." Among the cases cited are: *State* v. *Mowser*, 92 *N. J. L.* 474, and *State* v. *Cooper*, 13 *Id.* 361. We consider, however, that the present point is not well taken, and for the reason, which we deem fundamental, that in order to support a plea of *autrefois acquit* it must appear that under the other indictment the defendant could have been convicted of the same character of crime as that now charged, and it has been definitely held in this state that there cannot be a conviction of assault and battery under an indictment for manslaughter, for the reason that manslaughter does not necessarily involve assault and battery. *State* v. *Thomas*, 65 *Id.* 598. This doctrine was reiterated very recently in the case of *State* v. *Lehigh Valley Railroad Co.*, 90 *Id.* 372, citing the Thomas case, and holding that a general indictment for manslaughter will lie against a corporation aggregate. We consider, therefore, that as manslaughter does not necessarily involve assault and battery, an acquittal of that crime does not bar prosecution for assault and battery, especially when charged as committed on another person.

A cognate question of procedure is involved, viz., whether on trying this plea the judge properly directed the jury to find against the plea. The facts were not in dispute. And if the law be as we think it is and have stated above, it is obvious that no verdict in favor of the plea on those facts could possibly be supported. In *State* v. *Cooper*, 96 *N. J. L.* 376, 377, Mr. Justice Bergen, speaking for this court, said that the state may take issue on the facts stated and put the

defendant to proofs of the averments contained in the plea, and on the trial of that issue the court may charge the jury that the plea is not sustained by the proofs when that is the fact. There is no substantial difference between instructing the jury that the plea is not sustained by the proofs and instructing them to find against it; the difference is one of language merely. Hence, if the facts claimed by the defendant under the plea were incapable of supporting it, the verdict against the plea was properly directed.

The other matters argued before us relate to rulings on evidence, portions of the charge and refusal of requests to charge. Many of them we deem to be frivolous, and none of them we think is well founded; but they have been considered in detail. The first one argued is specification seven under section 136 of the Criminal Procedure act. The defendant called one Fagin, a Glen Ridge police officer, mainly to contradict the plaintiff's witness Krauth, who testified that he saw the accident from the sidewalk, and *immediately started his own car to give chase*, finally overtaking the defendant's car at Glen Ridge, and then recognized Johnny Cosgrove, police officer from Montclair; that another witness, named Dever, was with him, and a man named Shaw had jumped on the runboard. When the witness recognized Cosgrove and succeeded in stopping him, he called a policeman, who called Police Lieutenant Higgins, and report was then made of the occurrence, but that the police seemed little interested in the matter, and, while it was under discussion, Cosgrove and his car disappeared.

For the defense, Fagin was called and said he was the policeman in question and identified Krauth; that he rode with him until they found Higgins. The conversation between Krauth and Higgins was shown from Fagin's standpoint, and, finally, he said that Krauth and the two others drove away. Then he was asked several questions, one of which was excluded, and is the ground of specification seven.

"*Q.* And then they drove away? *A.* They drove away down Bloomfield avenue.

"*Q.* Were you ordered to do anything then?

"Objected to.

"The Court—By whom?

"Mr. Simandl—By Lieutenant Higgins, as the result of this conversation."

The objection was sustained, and properly so. It could not contradict Krauth because he had gone away, nor could it contradict Dever or Shaw. Defendant apparently had gone away, so that he was not present. The question was plainly incompetent.

Assignment No. 8—The witness Townsend was called as a character witness and gave the usual testimony. On cross-examination he was asked whether he had ever heard that the defendant had been convicted of crime, and admitted he had heard talk about his being in some trouble of that kind, but, notwithstanding that fact, he still bore a good reputation in Montclair. On redirect: "*Q.* You yourself knew of the details regarding the alleged plea of guilty to these facts? *A.* Yes, I knew of the details. *Q.* And you had investigated that yourself personally, had you?" Objected to, and excluded, the exclusion was proper. The question was Cosgrove's good reputation, not what the witness personally knew about the details of his conviction.

Assignment No. 10—This covers nearly half a page of the court's charge which bore upon the inferences that the jury were entitled to draw from the fact, if they so found, that the defendant ran away for the purpose of evading prosecution. Counsel says in the brief: "It is not contended that the rule is not properly expressed in this charge. It is, however, contended that it was the duty of the court to lay before the jury any explanations or qualifications arising from the evidence which in any way tended to show the alleged flight consistent with innocence or lack of consciousness." It is not claimed that any request was preferred in that regard, and in such case the rule is well settled that error cannot be predicated on a mere omission to comment on the evidence favorably to the defendant.

Assignment No. 13 challenges the following portion of the charge: "Now, an automobile, like a gun, is a dangerous

instrumentality under some circumstances." The claim is that this permitted the jury to draw the inference that an automobile and a gun were dangerous instrumentalities under the same circumstances. The error of this claim we think is obvious.

Assignment No. 14—The court charged: "So, in the case at bar, gentlemen, if you find that the defendant was at the time and place charged willfully, knowingly and intentionally running his automobile at a rate of speed and in such manner, which, under all the facts, circumstances and conditions existing in the case, was to him consciously and obviously dangerous to pedestrians or others lawfully using the highway, and he hit and maimed or wounded the little girl with his automobile while so doing, then you are at liberty, if you see fit, to draw the inferences I have indicated, and to find him guilty of atrocious assault and battery." Counsel says: "This permitted the jury, irrespective of the evidence, and merely, if they desired, or if they saw fit, to draw certain inferences and convict." This objection we deem to be frivolous; it is perfectly plain that the inferences the jury were authorized to draw were necessarily based upon the evidence in the cause. The charge was based upon *State* v. *Schutte,* 87 *N. J. L.* 15; 88 *Id.* 396.

Assignment No. 15—The court charged: "As I understand the attitude of the defendant through his counsel, it is not disputed that this little girl was struck and injured that night by an automobile. The question in that particular, which is contested, is whether or not the defendant was there present, and whether or not he is the man who struck by an automobile the little girl." The claim here is that the jury were permitted to convict on a finding of these facts alone without reference to the other elements of assault and battery, namely, the willful running down of the little girl. But it will be noted that the court was careful to use the words, "in that particular," and this fact we deem to be a complete answer to the argument now made.

Assignment No. 17—In the course of the charge the court said: "Gentlemen, the case is an important one. It involves

an accusation against an officer of the law." As to this, the argument is "that the effect of the instruction is to demand a higher and greater consideration of the case by the jury than the ordinary case where atrocious assault and battery is charged. The defendant was entitled to have his case considered by the jury in the same light as any similar case of atrocious assault and battery. The jury received an erroneous conception of this issue from the charge complained of, which is not warranted in the law and which prejudiced the defendant in his defense on the merits." As to this, we need only say that the charge was undoubtedly correct in fact, and the comment that it was an important case is entirely justified. If it was harmful to either party, it was harmful to the state rather than to the defendant.

Assignments Nos. 19 and 20—The jury came back after being sent out, and propounded the following question: "Is actual intent to atrociously assault necessary, or is it implied by recklessness in driving, by breaking of speed laws and fleeing from the spot?" to which the judge replied: "It may be implied, gentlemen, from those things, but you must take into consideration, of course, all of the testimony in the case. In order, perhaps, that I may make it clearer, I will read to you what I said to you before in my charge, and that is:" (The court then read an extract from the charge as already delivered.) It is now claimed, first, that the intent might be implied from any one of the matters mentioned in the question, but it is quite clear that this was not the effect of the instruction; second, that the judge failed to answer the inquiry adequately. We think the question was fairly answered, and, certainly, there was nothing misleading to the jury in the answer as given.

Assignments Nos. 21 and 25—No. 21, the court was requested to charge, "Mere negligence on the part of the defendant would not be sufficient to convict him of the crime of atrocious assault and battery. His conduct must be such as would evince in your minds beyond a reasonable doubt a willful and malicious intent to strike Lillian Dowling with his automobile." And request No. 25, "Before you can find

the defendant guilty of atrocious assault and battery, you must find from the evidence beyond a reasonable doubt a specific intent to injure Lillian Dowling or any other person using the highways at that time." The court refused to charge these requests, and did charge as has been quoted above under assignment No. 14. It is, of course, true that in the case of *Rose* v. *Squires,* 101 *N. J. L.* 438, now pending in the Court of Errors and Appeals, this court decided in a civil case that as to a license there must be a willful intent to injure. But, as pointed out in the Schutte case, *supra,* the civil action of negligence throws no light upon the distinction made by the criminal law between a willful and a negligent act. In a criminal case it was held, "We are dealing with a willful act done under circumstances that rendered likely the infliction of such an injury as that which actually resulted from it." *State* v. *Schutte, supra.* So far as the requests were proper, they were fully covered by the charge as delivered.

Assignments Nos. 22 and 24—No. 22, the court refused to charge as requested that, "It is for you, gentlemen of the jury, to decide, among other things, whether or not Krauth, Dever and Shaw were able to follow this car and keep it in sight in view of the testimony that the night was foggy and several witnesses have testified that a person could not see an object any great distance away from where they were standing." And No. 24, the court was requested and refused to charge, as follows: "Even if you are satisfied beyond a reasonable doubt from the evidence that an automobile struck and injured Lillian Dowling, and that the automobile which struck her did not stop after the accident, this fact alone is not sufficient to charge the driver of the car with the crime of atrocious assault and battery, it is only one factor in the evidence upon which you are to determine whether or not the conduct of the driver of the automobile was such as amounted to an intentional and malicious and atrocious act of assault and battery, in this connection, you may consider whether the driver knew he struck anyone, and whether or not the foggy condition of the weather prevented

him from seeing the person alleged to have been struck by the automobile."

The court did not err in refusing to charge the requests contained in assignment No. 22, because it was a mere comment on evidence, and it is well settled that the court is not required to comment on the evidence at the request of counsel.

Request No. 24 is faulty, because it necessarily involves the proposition that to support a conviction of assault and battery the act of assault must be intentional and malicious, which is just the question that has been discussed above. Moreover, the only argument urged to support the claim that it was error to refuse these requests, is that both of them involved some allusion to the foggy condition of the night, and that nowhere in the charge did the court mention this foggy condition. Comment on the facts, as we have just intimated, is discretionary with the court.

This covers all the points argued for the plaintiff in error. Our examination of the case satisfied us that no harmful error was committed at the trial, and the judgment is, accordingly, affirmed.